UNITED STATES DISTRICT COURT
FOR THE
DISTRICT COURT OF CONNECTICUT

-----------------------------------------------------------X

COMMERCIAL UNION INSURANCE COMPANY,

Plaintiff,

-against-

FRANKLIN LORD and SHARON SHUMAN

Defendants.

-----------------------------------------------------------X

Civil No. 303 CV 1046 AWT

**LOCAL RULE 56(a) 1 STATEMENT**

March 26, 2004

Plaintiff, COMMERCIAL UNION INSURANCE COMPANY, by its attorneys, NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE content that the following facts are undisputed:

1. The plaintiff, Commercial Union Insurance Company ("Commercial Union"), is a corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Massachusetts and is engaged in the business of underwriting marine insurance. (Complaint ¶4, Answer ¶4)

2. The defendants, Franklin Lord and Sharon Shuman reside at 59-B Williams Avenue, Mystic, Connecticut 06355, and were purchasers of a policy of marine insurance covering the WANDER LUST. (Complaint ¶5, Answer ¶5)

3. International Marine Insurance Services ("IMIS") is the insurance broker for defendants who placed the subject policy with plaintiff Commercial Union. IMIS is not a party to this action. (Complaint ¶6, Answer ¶6)

4. On May 24, 2001, Franklin Lord signed an Application submitted to Commercial Union for a marine insurance policy covering a 49' yacht known as the

"WANDERLUST," U.S.C.G. Official No. 1098135. The Application was transmitted to Commercial Union through defendants' broker IMIS who assisted the defendants in preparing the Application.(Complaint ¶7, Answer ¶7)

5. The Application signed by the defendant Franklin Lord and filled in part in Franklin Lord's handwriting states in part as follows:

> I understand that this application forms the basis upon which such insurance may be provided, and, therefore, *I certify that the representations made herein are true and complete to the best of my knowledge* and that any other fact material to this insurance have been disclosed on the reverse side of this form. I understand that this application will form a part of any insurance policy which may be issued *and that such policy shall be null and void if this application contained any misrepresentations.* (Emphasis added) (Complaint ¶8, Answer ¶8)

6. Copies of the Application of insurance is annexed hereto as Exhibits "A". (Complaint ¶9, Answer ¶9)

7. The marine insurance policy was for a period of one (1) year commencing on May 24, 2001 and expiring on May 24, 2002 at 12:01 a.m. The policy was renewed for a one year period ending May 24, 2003. (Defendants Counter Claim ¶9, Plaintiffs Answer to Counter Claim ¶9, Exhibit "B" to Complaint)

8. In or about March 3, 2003, Commercial Union issued a Notice of Cancellation or Non-Renewal to defendants advising them that the policy would not be renewed as of May 24, 2003 at 12:01 a.m. (Complaint ¶11, Answer ¶11)

9. Neither defendant had any communication with anyone at Commercial Union regarding the risk, the application or any other matter prior to issuance of the policy covering the WANDERLUST. (Lord Deposition Tr. p .69; Shuman Tr. p. 19, 31)

10. At no time during these policy periods, did defendants advise Commercial Union that the information contained in the Application was anything other than true and accurate. (Complaint ¶ 13, Answer ¶ 13)

11. On or about April 29, 2003, defendant Franklin Lord reported an engine room explosion, fire and sinking of the WANDERLUST approximately 3 nautical miles off the coast of St. Thomas, U.S. Virgin Islands. (Complaint ¶14, Answer ¶14)

12. The vessel was not found during a subsequent Coast Guard investigation. (Complaint ¶15, Answer ¶15)

13. Mr. Lord subsequently reported the loss to Commercial Union and made claim on the policy for $450,000.00. (Complaint ¶16, Answer ¶16)

14. Commercial Union issued a notice of rescission declaring the subject policy void *ab initio* on the ground the defendants had failed to disclose material facts and had made material misrepresentation of fact in obtaining the policy. Commercial Union tendered to defendants all premiums charged under the policies, less any credits previously made. (Complaint ¶17, Answer ¶17)

15. The Application for insurance states that the "purchase cost" of the vessel was $450,000.00. (Complaint Exhibit "A", Complaint ¶19, Answer ¶19)

16. In fact the defendants purchased the partially completed vessel for $48,000.00. The owner of the partially completed vessel, Salvatore Messina had purchased the hull from Kanter Yatch Corporation on April 17, 1984. (Lord Deposition Tr. 56, 57, Lord Deposition Exhibit 23, Messina Deposition Tr. 39)

17. The Application for insurance states that the vessel was purchased on November 7, 2000. (Complaint Exhibit "A", Lord Deposition Tr. 56, Hornig Affidavit Exhibit "A"

18. In fact the defendants purchased the partially completed vessel on July 3, 1996 from Salvatore Massina in Delaware Virginia. (Lord Deposition Tr. 56-57, Lord Deposition Exhibit 23, Messina Deposition Tr. 39)

19. The Application for insurance states that the vessel was "built at" Ontario, Canada. (Complaint Exhibit A, Hornig Affidavit Exhibit 6, Lord Tr. 52-54, 62)

20. In fact only the hull of the vessel was built by Kanter Yatch in 1984. During a twelve (12) year period from April 1984 to July 1996 Salvatore Messina completed a portion of the building of the vessel in New Jersey and Virginia including the installation of an engine, building out the interior framing of the vessel and building the cockpit. (Messina Tr. 39, 9-10, 36, 9-10, 16-25, 31)

21. The vessel was not purchased by the defendants from Kanter Yatch. (Lord Tr. 37)

22. With the exception of the hull built in 1984, the vessel was built by Salvatore Messina from 1984-1996 and thereafter until complication by the defendants from 1996-2000. (Messina 9-36; Lord Tr. 24-27)

23. The Application of insurance states that the engine was a "2000" "Perkins". (Complaint Exhibit "A", Lord Tr. 56-57)

24. In fact the engine on the vessel was a 1985 or earlier engine installed on the vessel by Salvatore Messina. (Messina Tr. 10, 31)

25. The Application for insurance states that the "Builder" was "Kanter" (Complaint Exhibit "A"; Hornig Affidavit Exhibit "A", Lord Tr. 47-48)

26. In fact the Application for insurance fails to disclose that all, carpentry, painting, electrical, plumbing installation of hydraulics, insulation, refrigerators, furnishing, installation of shaft and propellers, installation of hatches, doors, and windows, installation of

mast, installation of anchor and windlass, installation of stoves, sinks, showers, fixtures, installation of galley and cabins, installation of machinery, installation of cleats, blocks, and chocks, sails, through-hull fittings, seacocks, installation of fuel system, installing bilge pumps, installation of ventilators, installation of marine sanitation devices, installation of radios, radar, auto pilot, depth finders, finish work, electronics, pumps and rigging of the vessel was done by a prior owner, Salvatore Massina, defendants and or other unidentified entities. (Messina T. 9-39; Lord Tr. 24-34, 42-47, 149-153)

27. Prior to working on the WANDERLUST Franklin Lord had never worked in a boat yard nor did he ever work as a boat builder. (Lord Tr. 8)

28. Franklin Lord never personally met with anyone at IMIS in connection with obtaining insurance coverage for the WANDERLUST. All of Mr. Lord's communications with IMIS were either by phone or fax. (Lord Tr. 21)

29. Franklin Lord did not tell his insurance broker, Mr. Golden at IMIS or anyone at Commercial Union he had performed a substantial amount of work on building the WUNDERLUST. (Lord Tr. 48)

30. Franklin Lord did not advise his insurance broker Mr. Golden at IMIS or anyone at Commercial Union that he had personally worked over 12,000 hours in building out the S/V WANDERLUST. (Lord Tr. 34, 62-63)

31. Franklin Lord did not advise his insurance broker, Mr. Golden at IMIS or anyone at Commercial Union how he had determined the value he wanted to insurance the WANDERLUST, namely $450,000.00. (Lord Tr. 21, 48, 66-67, 69)

32. Franklin Lord never advise his insurance broker, Mr. Golden at IMIS or anyone at Commercial Union that he had purchased a partially completed hull in 1996 in

Virginia and thereafter had spent four and half years completing the vessel. (Lord Tr. 62-63, 66-69)

33. Franklin Lord never advised his insurance broker, IMIS or anyone at Commercial Union that a substation portion of the building of the WANDERLUST was performed in Connecticut or Rhode Island. (Lord Tr. 62-63, 66-67, 69)

34. Franklin Lord never advised his insurance broker, IMIS, or anyone at Commercial Union that he had done work on the vessel purchased in Virginia in order to make it seaworthy for a voyage to Rhode Island in 1996. (Lord Tr. 63, 69)

35. Franklin Lord never advised his insurance broker, IMIS, or anyone at Commercial Union that he had motored the WANDERLUST from Virginia to Rhode Island in 1996. (Lord Tr. 63, 67, 69)

36. The engine used to motor the WANDERLUST from Virginia to Rhode Island in 1996 was the same engine that was installed on the vessel in May 2001, when Franklin Lord signed the Application for insurance. (Lord Tr. 37-39), 55-58)

37. On May 24, 2001 Franklin Lord knew that the engine on the WANDERLUST was not a 2000 engine. (Lord Tr. 37-39, 55)

38. The defendants never informed their insurance broker, IMIS, or anyone at Commercial Union that they had no insurance for the vessel during the voyage from Virginia to Rhode Island nor from 1996 and 2001 while the vessel was being built out and/or completed by defendants. (Lord Tr. 48-49, 69)

39. The defendants never informed their insurance broker, IMIS or anyone at Commercial Union that they had purchase the WANDERLUST from Sal Massina, when it was partially completed. (Lord Tr. 24, 47-49, 52-54, 63)

Dated: New York, New York
March 26, 2004

LAW OFFICE OF NICOLETTI HORNIG
CAMPISE SWEENEY & PAIGE
Attorneys for Plaintiff
Commercial Union Insurance Company

By: ______________________________

David R. Hornig, Esq.
CT Bar No.: ct06120
NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Telephone No.: (212) 220-3838
Telefax No.: (212) 220-3784
(FILE NO.: 10000379 DRH)

X:\Public Word Files\1\379\Legal\Local Rule 56(a)1 Statement.doc/s/ci

**CERTIFICATION OF SERVICE**

This is to certify that the a copy of the foregoing LOCAL RULE 56(a) 1 was sent via first class mail, postage prepaid this 26th day of March, 2004 to the following:

James J. Schultz, Esq.
LAW OFFICES OF JAMES J. SCHULTZ
164 Belridge Road
New Britain, Connecticut 06053

Robert K. Marzik, Esq.
LAW OFFICES OF
ROBERT K. MARZIK, P.C.
1512 Main Street
Stratford, Connecticut 06615

FRANKLIN LORD, *Pro Se*
177-A Bimini Drive
Palmetto, Florida 34221

Dated: New York, New York
March 26, 2004

DAVID R. HORNIG
CT Bar No.: ct06120

X:\Public Word Files\1\379\Legal\CERTIFICATE OF SERVICE-DRH.ci.doc

Exhibit A




INTERNATIONAL MARINE INSURANCE SERVICES
208 Piney Narrows Road
Chester, Maryland 21619
410-643-8330 • fax 410-643-8331
Allen D. Golden, President

06/26/2001 Appear issue a policy for this risk.

# APPLICATION

APPLICANT: NAME: Franklin Lord & Sharon Schuman
ADDRESS: 59-B Williams Ave/Mystic, CT 06355
HOME PHONE: (860) 536-~~0927~~ 8717 SSN & DRIVER LIC. NO.: 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 CT. 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
WORK PHONE:
AGE & OCCUPATION: 56/Delivery Captain
YEARS OPERATING BOATS: 45
PREVIOUS INSURER: new purchase
YEARS BOAT OWNERSHIP: 35
DECLINED (explain if yes): no
EXPERIENCE DESCRIPTION: owned-to 45' sail
TRAINING: 100 Ton Masters License
CLAIMS (5 yrs): none
OTHER OPERATOR(S): none
ADDITIONAL INSURED(S): none
LOSS PAYEE(S): none

VESSEL: NAME: WANDERLUST
YEAR: 2000 LENGTH: 49
BUILDER: Kanter
MODEL: cutter
TYPE: auxiliary sail
BUILT AT: ONTARIO, CANADA
CONSTRUCTION: steel
HULL ID. NO.: ZKNK 49470484
REGISTRATION NO.: 1098135
DISPLACEMENT:
PURCHASE DATE: 11/07/2000
PURCHASE COST: $450,000.00
NEW REPLACEMENT COST: 500000
NO. OF ENGINES: 1
ENGINE SERIAL NOS.: LD20663U987364L
ENGINE YEAR: 2000
MAKER: Perkins
FUEL: diesel
DRIVE: inboard
TOTAL HORSEPOWER: 85
SPEED (mph): 12
AUTO. EXTINGUISHER: no FUME DETECTOR: no VHF RADIO: yes DEPTH SOUNDER: yes
LORAN/SATNAV/GPS: yes THEFT ALARM: no STOVE FUEL: LPG GENERATOR FUEL: ~~none~~ DIESEL
TENDER & OUTBOARD: 2000 custom aluminum skiff; 1998 Mercury 18hp
TRAILER: none
ADDITIONAL SAFETY EQUIPMENT: RADAR, LIFE RAFT, EPIRB

COVERAGE: USE: private pleasure
NAVIGATION AREA: US Atlantic coast, Bahamas, Caribbean
PRINCIPAL MOORING: Mystic, CT
LAY-UP: none

| Coverage | Limit | Premium |
|---|---|---|
| HULL ($ 4,500 deductible): | $ 450,000 | $ 3714 |
| LIABILITY: | $ 500,000 | $ 306 |
| MEDICAL PAYMENTS: | $ 10,000 | $ incl |
| PERSONAL EFFECTS: | $ 2,500 | $ incl |
| UNINSURED BOATER: | $ 10,000 | $ incl |
| TOWING & LABOR: | $ 500 | $ incl |
| TENDER ENDORSEMENT: | $ 4,000 | $ 80 |

COMPANY: Commercial Union
BINDER NUMBER: 0114402
EFFECTIVE DATE: 05/24/2001
EXPIRATION DATE: 05/24/2002
TOTAL PREMIUM: $ 4100 PAID

I hereby apply to the Company for the insurance described above. I understand that this application forms the basis upon which such insurance may be provided, and, therefore, I certify that the representations made herein are true and complete to the best of my knowledge and that any other facts material to this insurance have been disclosed on the reverse side of this form. I understand that this application will form a part of any insurance policy which may be issued and that such policy shall be null and void if this application contains any misrepresentations. I hereby appoint International Marine Insurance Services as my broker of record.

DATE: 05/24/2001
APPLICANT SIGNATURE: Franklin Lord