FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT COURT OF CONNECTICUT

2004 JUN 15  A 11: 21

U.S. DISTRICT COURT
HARTFORD, CT.

------------------------------------------------------------X

COMMERCIAL UNION INSURANCE
COMPANY,

                     Plaintiff,

     -against-

FRANKLIN LORD and SHARON SHUMAN

                     Defendants.

Civil No.  3:03 CV 1046 (AWT)

June 11, 2004

------------------------------------------------------------X

**COMMERCIAL UNION INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE SURREPLY**

NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
Attorneys for Plaintiff
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
(212) 220-3830

OF COUNSEL:

    David R. Hornig, Esq.

## PRELIMINARY STATEMENT

Plaintiff Commercial Union Insurance Company ("Commercial Union") respectfully submits this memorandum of law in support of its motion to strike the sur-reply[1] filed by defendants Franklin Lord and Sharon Shuman (hereafter collectively referred to as "defendants" or "Lord"). Commercial Union alternatively requests that if the sur-reply is not stricken, then the Court consider this memorandum as submitted in response to the improper sur-reply and in further support of Commercial Union's motion for summary judgment.

## FACTS

The relevant facts are set forth in the affidavit of David R. Hornig, Esq. and will not be set forth at length herein. The key undisputed facts, which bear repeating, are these.    First, defendants failed to provide Commercial Union with the correct purchase price, the correct year of the engines and the correct year of the vessel, among other misinformation transmitted to Commercial Union as part of the application process. Second, Commercial Union did not have the records of the United States Coast Guard until after the casualty.  The certification stamp on each of those records indicates clearly that these were forwarded post loss.  Finally, there is absolutely no evidence submitted in support of the new factual allegations set out in the memorandum submitted by defendants' counsel on Lords' behalf.  For example, while Lord contends that the disclosure of the engine serial number conveyed to Commercial Union the year of its manufacture, there is absolutely no support in the record for this contention, in any of the

---

[1] The sur-reply is captioned "Defendants Franklin Lord and Sharon Shuman's Supplemental Memorandum of Law in Opposition to Motion for Summary Judgment" dated May 26, 2004.

manufacture, there is absolutely no support in the record for this contention, in any of the prior proceedings or in the deposition of Franklin Lord, who testified that he had no idea what the engine serial number meant.

Even if the serial number facially conveyed any facts about the manufacture of the engine, which is denied, defendants have failed to put any contested fact about this disclosure into a Local Rule 56(a) 2 statement required for summary judgment motions. Even assuming this claim was supported by such a statement, Commercial Union contends that defendants still have not presented sufficient evidence to deny the motion for summary judgment. Moreover, in this action the defendants do not dispute any of the material facts set forth in the Local Rule 56(a) 1 Statement, with the exception of the defendants' current address. The elemental facts are clear and undisputed by the defendants, this action is ripe for summary judgment, and defendants' spurious sur-reply fails to raise any triable issue of fact.

## LEGAL DISCUSSION

### POINT I

### STANDARD FOR DISCLOSURE DOES NOT PLACE BURDEN OF INVESTIGATION ON UNDERWRITER

In the sur-reply memorandum, defendants turn the standard for disclosure required by federal admiralty law on its head by contending that its submission of coded, unclear and contradicted information should have placed Commercial Union on notice that the hull was 17 years old at the time the application was bound and that the engines were not manufactured in 2000 as represented. The applicable standard does not require Commercial Union to look suspiciously upon all of the representations contained in the

2

application for insurance, or to challenge the truth of the facts set forth and attested to in a certification by the applicant which states that the applicant understands that the insurance to be issued will be predicated upon the facts set out in the application and that these facts are "true and complete to the best of my knowledge and that any other facts material to this insurance have been disclosed on the reverse side of this form."    See Exhibit "A" to Commercial Union's Local Rule 56(a) 1 Statement.

The appropriate standard for disclosure for marine insurance has its roots in Carter v. Boehm (1766) 3 Burr. 1905 where the Court stated:

> Insurance is a contract upon speculation. The special facts upon which the contingent chance is to be computed lie most commonly in the knowledge of the insured only; the underwriter trusts to his representation and proceeds upon confidence that he does not keep back any circumstance in his knowledge to mislead the underwriter into a belief that the circumstance does not exist, and to induce him to estimate the risk as if it did not exist.
>
> The keeping back of such circumstance is a fraud, and therefore the policy is void. Although the suppression should happen through mistake without any fraudulent intention, yet still the underwriter has been deceived, and the policy is void because the risk run is really different from the risk understood and intended to be run at the time of the agreement. The policy would equally be void against the underwriter if he concealed anything within his own knowledge, as, for example, if he insured a ship on a voyage and he privately knew that she had already arrived, and in such circumstances he would be liable to return the premium paid. Good faith forbids either party, by concealing what he privately knows, to draw the other party into a bargain owing to his ignorance of that fact, and believing the contrary.

This standard requires affirmative disclosure by the insured. This principle remains good law and is the foundation for the motion.

Defendants contend that they fall within the ambit of <u>Puritan Ins. Co. v. Eagle S.S. Co., S.A.</u>, 779 F.2d 866 (2d Cir. 1985). Their reliance upon this decision is misplaced. In <u>Puritan</u>, it was alleged that the insured made misrepresentations in applying for the policy by: (1) failing to disclose the large amount of a prior loss; and (2) failing to disclose a second prior loss. With respect to the first non-disclosure, the insured advised underwriters that it had suffered a loss, but did not disclose the amount. The insurer did not inquire about the amount. The Second Circuit held that if the amount of the loss was material to the underwriters' decision to write the policy, then the insurers should have inquired.

With respect to the second undisclosed loss, the Second Circuit found that the failure to disclose this loss was not material since the insurers were "following" another insurance company and had only a 5% stake in the risk and that it had accepted the risk based on the judgment of the lead underwriter, not the information submitted by the insured. Clearly, no logical comparison can be drawn between the misrepresentations in this action and the situation in <u>Puritan</u>.

In this case, underwriters solely relied upon the information contained in the application for insurance in determining whether to write this risk. Second, the "disclosures" which defendants claim should have put Commercial Union on notice that further inquiry was required in no way approximate the specificity of the partial disclosure in <u>Puritan.</u> First, there is no information conveyed in the serial number of the engine that would have placed the underwriter on notice that further inquiry into the truth of Lord's representations was necessary. Second, any information that might have been conveyed by the serial number was counterbalanced by the applicant's direct statement

4

that the engine "year" was 2000. Third, the affirmative representation that the engine was a 2000 model year comported with the overall impression created by the application that this was a new vessel, built in 2000 by Kanter, and purchased from the builder for $450,000.00.

Further, the information in this case was not conveyed in a manner designed to call attention to the need for further inquiry by underwriters. Instead, the information was deliberately arranged to hide the need for a survey of the hull by creating a careful presentation of facts, each containing a kernel of truth while concealing the larger lie. For example, while Kanter did construct the hull, Lord fails to advise that Kanter had nothing to do with the installation of the mast, which was constructed from used components, the rigging, the through hull fittings (which can leak), the installation of the engine, the design or construction of the cabin/salon which could affect the vessel's stability and seaworthiness, or any other aspect of this vessel's design or construction.

The fact that the defendants sailed the vessel for the two years while the policy had been deceptively obtained does not change the fact that this was essentially a home built vessel of uncertain construction origin and design which was held out by Lord for insurance as fully built by Kanter in 2000. Defendants' quibbling about the craftsmanship misses the point: Commercial Union was entitled to judge the craftsmanship of the vessel for itself before it accepted the risk. Commercial Union was deprived of this opportunity by Lord's patent misrepresentations, which were only revealed after the vessel sank under suspicious conditions.

This action is more similar to <u>Gulfstream Cargo, Ltd. V. Reliance Ins. Co.</u>, 409 F.2d 974 (5th Cir. 1969) in which the court confirmed that a partial disclosure could not cure the failure to affirmatively disclose:

> Nothing in this mild disclosure put [insurers] on notice further inquiry concerning the extent and nature of things which then made the vessel completely unfit...this did not constitute a waiver of the underwriter's absolute right to demand full, open, honest, complete, accurate disclosure of facts then well known which bore directly upon the [risk].

<u>Gulfstream</u>, 409 F.2d at 982.

It is equally absurd to argue that defendants accurately disclosed the correct year of the vessel as "1984" based upon the submission of the hull identification number. As with the serial number on the engine, any possible clue that the hull was constructed in 1984 was contradicted by the provision of additional information which appears deliberately provided to dissuade underwriters from looking suspiciously on the application. The application notes that the engine year is 2000, the vessel year is 2000, and the purchase date was November 2000. The totality of this information conveyed to underwriters that the subject vessel was a new vessel.

The authorities relied upon in Commercial Union's principal memorandum[2] are clear that an applicant for marine insurance does not satisfy his duty of good faith by concealing a single true fact in an avalanche of misrepresentations in the hope that the underwriter will fail to recognize it. The defendants' efforts to back pedal from their description of the vessel as "new" based on their subjective view of its allegedly "like new" condition should also be rejected. Commercial Union sought information regarding the year of manufacture, which determines whether the vessel or

---

[2] which will not be repeated in this response to a sur-reply.

equipment is "new." Had the engine been "new," Commercial Union might have had a warranty based subrogation action for the loss of a luxury yacht due to an engine fire. Clearly, any warranties attaching to an engine sold to Salvatore Messina and installed on the vessel in 1985 were expired. Both the UCC and the Magnusson-Moss Federal Warranty Act 15 U.S.C. 2301 et seq. indicate that any recovery would have been terminated by the age and prior use of the vessel and its equipment. Defendants' argument that the vessel was "new" because it was in subjectively good condition is specious and insufficient to raise a triable issue of fact.

Further, defendants' attempted distinction of the decision in <u>King v. Aetna Insurance Co.</u>, 54 F.2d 253 (2d Cir. 1931) on the grounds that the misrepresentation of the purchase price in that case was inflated by a factor of 16 is meritless. The degree of misrepresentation is not the critical issue. The fact that a misrepresentation was made regarding a material fact is the significant point made in <u>King</u>. Moreover, even applying defendants' flawed interpretation of <u>King</u> to this action reveals that the defendants' policy must be voided since Lord misrepresented his purchase price by a factor more than 9.[3]

## POINT II

### THE AFFIDAVIT OF <u>OFSTEIN MUST BE DISREGARDED</u>

Defendants' urge this Court to consider the affidavit of James Ofstein as a "fact" affidavit that creates an issue of fact that requires a trial. These arguments must be disregarded. While Mr. Ofstein may be able to offer some fact evidence on the condition or equipment aboard the WANDERLUST, his entire affidavit consisted of expert

---

[3] Lord represented that the purchase price was $450,000.00, but only paid $48,000.00 for the vessel.

opinion. Ofstein's conclusions on the value of the vessel and the manner in which the Coast Guard documents vessels are unquestionably expert opinions. As noted in Commercial Union's reply memorandum, Ofstein was never disclosed as an expert witness, the basis for his opinions or his experience and credentials were never disclosed, nor did defendants comply with Rule 26.

Moreover, even assuming *arguendo* that the Ofstein affidavit sets forth facts, and not improper expert opinion, it is clear that none of these facts warrant the denial of summary judgment. The condition or value of the vessel attested to by Ofstein is not a fact in dispute. The "fact" in dispute is defendants' misrepresentation of the purchase price of the vessel, not Lord's representation of its replacement value. Similarly, there is no "fact" question raised by Ofstein's interpretation of the Coast Guard documentation practices. This Court can take judicial notice that the United States Coast Guard does not issue the "year" of a vessel to an owner, does not fill out any of the paperwork on behalf of an owner, and creates the abstract of title from the owner's documentation. Ofstein's unfounded belief to the contrary is not a question of fact. This Court would have to set aside common sense as well as established judicial precedent to find that a layperson's interpretation of the Code of Federal Regulations was superior to the plain meaning of the regulation itself and the Federal Department's interpretation and enforcement of that regulation.

Summary judgment requires that the party opposing the grant of summary relief raise more than mere metaphysical differences of opinion. The purported "fact" in issue must be germane to the legal issues presented and be "genuinely" in dispute. See, Celotex v. Catrett, 477 U.S. 317 (1986); Matsushita Electrical Co., Ltd. V. Zenith Radio

Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, 477 U.S. 242 (1986). In this case, none of the purported factual disputes raised by the Ofstein affidavit raise a real or genuine issue of fact which requires a trial. Furthermore, in opposition to Commercial Union's motion for summary judgment the defendants in their Local Rule 56(a) 2 Statement did not include "...a list of each issue of material fact as to which it contended there is a genuine issue to be tried" as required by Local Rule 56. The motion by Commercial Union should be granted.

## POINT III

### THE SUR-REPLY WAS IMPROPER AND SHOULD BE STRICKEN

Local Rule 7 governing motion practice in this Court is clear: a motion is fully briefed when the Court is provided with the papers in support of the motion, in opposition to the motion, and in reply to the opposition. The Rule makes no allowance for the filing of a sur-reply as a matter of right. While the case authorities and local practice reveal that sur-replies can be filed upon prior approval from the Court, it is noteworthy that, in this action, no prior permission was sought from the Court before defendants filed their sur-reply and forced Commercial Union to respond to the inaccurate and erroneous assertions made in the sur-reply. Accordingly, the sur-reply should be stricken. See, Root v. Liston, *slip op.* 3:03-CV-949, 2003 WL 22937686 (D.Conn. Dec. 10, 2003)(Sur-reply filed without prior court approval stricken.); Hale Propeller, L.L.C. v. Ryan Marine Products PTY., Ltd., 151 F.Supp.2d 183 (D. Conn. 2001)(Sur-reply permitted when prior approval sought although affidavit and materials submitted as part of the sur-reply were disregarded since they were first proffered on sur-

reply and violated practice rule which limits replies to arguments and evidence to the responsive brief. The Court held that the sur-reply affidavit should have been submitted with the opposition and, therefore, was properly disregarded.).

## CONCLUSION

Based upon the foregoing and upon the affidavit of David R. Hornig, Esq. sworn to on June 11, 2004, Commercial Union asks this Court to strike the sur-reply filed by defendants. Alternatively, in the event that this Court finds that the sur-reply can be considered, Commercial Union requests that the Court likewise consider the foregoing in response to defendants' sur-reply.

THE PLAINTIFF,
COMMERCIAL UNION INSURANCE COMPANY

By: _____
David R. Hornig, Esq.
Ct Bar No.: ct06120
NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
Wall Street Plaza, 88 Pine Street, 7th Floor
New York, New York 10005-1801
Telephone No.: (212) 220-3838
Telefax No.: (212) 220-3784
(File No.: 10000379 DRH)

## CERTIFICATION OF SERVICE

This is to certify that the foregoing MEMORANDUM OF LAW was sent via

first-class mail, post pre-paid on the 11th day of June, 2004 to the following:

James J. Schultz, Esq.
LAW OFFICES OF JAMES J. SCHULTZ
164 Belridge Road
New Britain, Connecticut 06053

Robert K. Marzik, Esq.
LAW OFFICES OF
  ROBERT K. MARZIK, P.C.
1512 Main Street
Stratford, Connecticut 06615

FRANKLIN LORD, *Pro Se*
307 Farmholme Road
Stonington, Connecticut 34221

DAVID R. HORNIG
CT Bar No.: ct06120