UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COMMERCIAL UNION INSURANCE COMPANY, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :    No. 3:03CV1046(DJS) <br> : |
| FRANKLIN LORD and SHARON SHUMAN, | : <br> : <br> : |
| Defendants. | : |

MEMORANDUM OF DECISION

On June 12, 2003, plaintiff Commercial Union Insurance Company ("Commercial") filed this action seeking to declare the marine insurance policy issued to defendants Franklin Lord ("Lord") and Sharon Shuman ("Shuman") void ab initio[1] due to material misrepresentations of fact on the insurance application. On March 31, 2003, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Commercial filed a motion for summary judgment (dkt. # 13). For the reasons that follow, Commercial's motion is **GRANTED**.

I. FACTS

On May 24, 2001, Lord completed an application to Commercial for a marine insurance policy through International Marine Insurance Service ("IMIS"), a marine insurance broker. Lord

---

[1] "An agreement is said to be 'void ab initio' if it has at no time had any legal validity." Black's Law Dictionary at 6 (6th ed. 1990).

sought a marine insurance policy for his forty-nine foot vessel named the WANDERLUST. Commercial issued the policy based upon Lord's representations set forth in the application. The policy was for a period of one year, commencing on May 24, 2001, and expiring on May 24, 2002. Commercial renewed that policy for a period of one year ending May 24, 2003. On or about March 3, 2003, Commercial issued a Notice of Cancellation to Lord and Shuman advising them that their policy would not be renewed as of May 24, 2003.

On or about April 29, 2003, Lord reported the sinking of the WANDERLUST approximately three nautical miles off the coast of St. Thomas, U.S. Virgin Islands. An engine room explosion appears to have been the cause of the fire resulting in the loss of the vessel. The U.S. Coast Guard was unable to locate and salvage the remains of the vessel. Lord subsequently reported the loss to Commercial and made a claim on the policy for $450,000.00.

Commercial seeks a declaration from this court that the policy upon which Lord made this claim is void ab initio. On May 24, 2001, Lord signed the application for the marine insurance policy in question. In the application, Lord supplied the following specifications regarding the WANDERLUST: (1) "Previous Insurer: new purchase;" (2) "Year: 2000;" (3) "Builder: Kanter;" (4) "Built At: Ontario, Canada;" (5) "Purchase Date: 11/07/2000;"

-2-

(6) "Purchase Cost: $450,000.00;" (7) "New Replacement Cost: 500000;" (8) "Engine Year: 2000;" and (9) "[Engine] Maker: Perkins." (Compl., Ex. A). Lord did not enter any information on the reverse side of the application where the applicant is required to list any additional "facts material to this insurance." (Id.).

Commercial claims that the responses Lord supplied, which are quoted in the preceding paragraph, are material misrepresentations. Specifically, Lord failed to state that, while Kanter built the hull in Ontario, Canada in 1984, Lord purchased the WANDERLUST as a partially completed vessel from Salvatore Messina in Virginia on August 20, 1996 for $48,000.[2] Shortly after he purchased the vessel, Lord operated the vessel, under its own power, from Virginia to Rhode Island, where he completed the vessel in 2000, at a total cost of what he claims to be $450,000.00. Finally, the engine was built in 1996, and had been used several times by Lord before he completed the application for insurance.

## II. DISCUSSION

Commercial claims that Lord misrepresented material facts on his application for marine insurance, and that Lord's representations render the policy it issued to him void <u>ab</u>

---

[2] Lord did list the hull's identification number, which indicates that it was built in 1984.

_initio_.  Lord contends that he did not misrepresent any material facts on the application, and that his answers were essentially truthful.  Because Lord has not submitted sufficient evidence to create a genuine issue of material fact, Commercial's motion for summary judgement is granted.

### A.  STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty

-4-

Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all
inferences and ambiguities in a light most favorable to the
nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d
Cir. 1991).  "Only when reasonable minds could not differ as to
the import of the evidence is summary judgment proper."  Id.

B. MATERIAL MISREPRESENTATIONS

    Both parties agree that the doctrine of uberrimae fidei
controls the discussion of Commercial's claim.  The doctrine of
uberrimae fidei requires that "parties to a marine insurance
policy must accord each other the highest degree of good faith."
Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 13 (2d Cir. 1986);
Puritan Ins. Co., v. Eagle S.S. Co. S.A., 779 F.2d 866, 870 (2d
Cir. 1985).  As such, the insured must disclose "all
circumstances known to him which materially affect the risk."
Btesh v. Royal Ins. Co., 49 F.2d 720 (1931); Sun Mutual Ins. Co.
v. Ocean Ins. Co., 107 U.S. 485, (1883).  Moreover, the onus is
on the insured to disclose those circumstances or facts that a
reasonable person in the insured's position would know are
material, rather than wait for the insurer to investigate.
Knight, 804 F.2d at 13.  A material circumstance or fact is one
which "would have controlled the underwriter's decision to accept
the risk."  Id.; (quoting Puritan Ins. Co., 779 F.2d at 870-71)
(internal quotation marks omitted).  Failure to disclose material
facts or circumstances permits the insurer to declare the policy

-5-

void <u>ab</u> <u>intitio</u>.  <u>See</u> <u>id</u>.

Commercial claims that Lord misrepresented the following facts on his application for marine insurance: (1) "Previous Insurer: new purchase;" (2) "Year: 2000;" (3) "Builder: Kanter;" (4) "Built At: Ontario, Canada;" (5) "Purchase Date: 11/07/2000;" (6) "Purchase Cost: $450,000.00;" (7) "New Replacement Cost: 500000;" (8) "Engine Year: 2000;" and (9) "[Engine] Maker: Perkins."  (Compl., Ex. A).  Commercial submits that these facts are material, thereby compelling this court to declare the policy void <u>ab</u> <u>initio</u>.  Lord and Shuman cannot, as a matter of law, establish that the responses Lord supplied on the marine insurance application were not material misrepresentations.

The information Lord supplied to Commercial in the application is material.  "The standard for disclosure is an objective one, that is, whether a reasonable person in the assured's position would know that the particular fact is material. . . .  To be material, the fact must be 'something which would have controlled the underwriter's decision' to accept the risk."  <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 13 (2d Cir. 1986).  Common sense suggests that Commercial decided to accept the risk based upon Lord's representations on the application concerning the purchase price, the year the vessel was constructed, and the year the engines were constructed.  <u>See</u> <u>Albany Insurance Company v. Horak</u>, No. CV-92-2157, 1993 WL

-6-

269620, at *8 (E.D.N.Y. Jul. 13, 1993) (holding that a reasonable person in the insured's position would know that direct questions on an insurance application "would have controlled the underwriters decision to accept the risk."). Moreover, the application should have indicated to Lord that the information he provided would have "controlled the underwriters decision to accept the risk." The application, signed by Lord, states the following: "I hereby apply to the Company for the insurance described above. I understand that this application forms the basis upon which such insurance may be provided. . . ." (Compl., Ex. A). A reasonable insured in Lord's position must have known that the questions on the application at issue were designed to elicit information upon which the underwriter will determine "whether to accept the risk." As such, the information provided by Lord in the application is material as a matter of law.

The responses provided by Lord are misrepresentations. Lord stated on his application that the "Purchase Date" was "11/07/2000," that the "Purchase Cost" was "$450,000.00," and that the "builder" was Kantor. There is no dispute, however, that Lord purchased the partially completed vessel later named WANDERLUST from Messina on August 20, 1996 for $48,000.00 and then completed the vessel himself, in Rhode Island, in 2000. There is no possible construction of Lord's responses that is not misleading. The only conclusion that may reasonably be drawn

-7-

from Lord's responses is that he purchased the WANDERLUST, built by Kanter in Ontario, on November 7, 2000 for $450,000, which is not true.  Pursuant to the doctrine of uberrimae fidei, Lord had an obligation to avoid conveying a false impression to the insurance company, and he did not fulfill this obligation.

Lord's attempt to justify his misleading responses to Commercial's inquiries are unavailing.  Lord's argument that his expenditures and labor reflect the remaining $402,000 comprising the "Purchase Cost" lacks merit.  The ordinary meaning of this term is the amount of money that changed hands when Lord acquired the vessel.  At the very least, if Lord did construe the term as he claims, qualification of his response was required.  Even if the term "Purchase Cost" may be construed, unreasonably, to mean the value of the yacht upon completion, Lord's submission that his labor and expenditures may be valued at $402,000.00 is not supported by the record.  He does not offer receipts or records to support his claim.  Instead, Lord offers vague recollections concerning the amount of money he spent to complete the WANDERLUST, and the time it took to complete.  These recollections are not enough, as a matter of law, to create a genuine issue of material fact regarding whether Lord's response that the "Purchase Cost" of the WANDERLUST was $450,000 satisfied Lord's obligation not to convey a false impression.

Lord argues that Commercial should have inferred from the

-8-

hull identification number and engine serial number that the hull
was completed in 1984 and that the engine was used before.  In
doing so, he reasons, Commercial had the opportunity to request a
survey or to investigate further.  That investigation, he argues,
would have revealed that the engine was not new, that the vessel
was not purchased as "new" in 2000, and that the $450,000.00
"Purchase Cost" was derived form Lord's estimations regarding his
own labor and expenditures.

     This argument is without merit.  Even if this court were to
accept Lord's assertion that the last two digits of a hull
identification number universally indicate the year in which the
hull was constructed, Lord's misleading responses on the
application negate the effect of the accurate identification
number.  Lord's other responses foster the impression that the
WANDERLUST was a new Kantor vessel built in Ontario, Canada.  As
a matter of law, Lord cannot mitigate this false impression
through the hull identification number; it is well settled that
"since the assured is in the best position to know of any
circumstances material to the risk, he must reveal those facts to
the underwriter, rather than wait for the underwriter to
inquire." Knight, 804 F.2d at 13.

     Lord and Shuman claim that Lord, in completing the insurance
application, was bound by the certificate that the Coast Guard

-9-

provided him.[3]  Yet, Lord and Shuman have produced no evidence to suggest that the Coast Guard certificate prevented Lord from providing Commercial with accurate information regarding the WANDERLUST.  Moreover, the certificate raises the question of why Lord provided different information to the Coast Guard than the information he supplied on insurance application form.[4]  Even assuming Lord was bound by the Coast Guard certificate, nothing prevented him from expanding upon, or qualifying his answers on the reverse side of the application.

There is nothing in the record detracting from the fact that Lord conveyed a materially false impression to Commercial when he applied for an insurance policy.  Lord provided no qualification of or explanation for his responses to Commercial's inquiries that he purchased the WANDERLUST for $450,000 on November 7, 2000, and that the vessel was built by Kantor in Ontario, Canada. Lord did not satisfy his obligation to provide accurate and complete responses to Commercial's inquiries.  As such, the policy Commercial issued to Lord and Schuman is void <u>ab initio</u>.

---

[3] Lord and Shuman's assertion that Commercial's receipt of the Coast Guard certificate should have informed Commercial of certain material facts regarding the Wanderlust is also without merit.  The certificate clearly indicates that Commercial did not receive the certificate until after the loss was reported.

[4].Lord lists Westerly, RI as the "place of build" on the Coast Guard certificate, while listing Ontario, Canada on the application for insurance

### III. CONCLUSION

For the preceding reasons, Commercial's motion for summary judgment (dkt. # 13) is **GRANTED.** Pursuant to 28 U.S.C. § 2201, judgment shall enter in favor of Commercial Union Insurance Company as follows:

> The insurance policy number CPJ E00752 issued to FRANKLIN LORD and SHARON SHUMAN by COMMERCIAL UNION INSURANCE COMPANY for the period of May 24, 2001 through May 24, 2002, including all endorsements thereto, is null and void, and COMMERCIAL UNION INSURANCE COMPANY has no liability to FRANKLIN LORD and SHARON SHUMAN resulting from the loss of the S/V WANDERLUST.

The Clerk of the Court shall close this file.

**IT IS SO ORDERED** at Hartford, Connecticut, this 7th day of October, 2005.

**/s/DJS**
_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**

-11-